Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI210011478
Transaction ID: 0014834968
Filing Date: 12/02/2021 10:19:15 AM CST

## IN THE DISTRICT COURT FOR DOUGLAS COUNTY, NEBRASKA

| | |
|---|---|
| BML REC LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOOD BANANA LLC,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff BML Rec, LLC ("BML"), by and through its undersigned counsel, states and alleges as follows for its claims against Defendant Good Banana LLC ("Defendant" or "Good Banana"):

### PARTIES

1. BML is a Nebraska limited liability company with its principal place of business in Omaha, Nebraska.

2. Upon information and belief, Defendant is a Connecticut limited liability company which claims to design and sell novelty toy products throughout the United States, including Nebraska.

### JURISDICTION AND VENUE

3. This Court has personal jurisdiction over the Defendant because Nebraska's long-arm statute—Neb. Rev. Stat. § 25-536—permits a Nebraska court to exercise personal jurisdiction over a person who, "directly or by an agent… (a) Transact[s] any business in the state; (b) Contract[s] to supply services or things in this state; (d) Caus[es] tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; … or (2) has any other contact with or maintains any other relation

1

**EXHIBIT A**

to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States." Neb. Rev. Stat. § 25-536.

4. Defendant is currently selling certain products/designs at issue in this case through a retail store located in Omaha, Nebraska. Additionally, Defendant offers the products/designs at issue in this case for sale online, where they may be purchased by, and shipped to Nebraska, residents. Accordingly, as Defendant is "transacting business in this state," "[c]ontracting to supply services or things in this state;" "[c]ausing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;" within the meaning of Neb. Rev. Stat. § 25-536(1)(a), this Court has personal jurisdiction over Defendant.

5. This Court has subject matter jurisdiction over this dispute pursuant to Neb. Rev. Stat. § 24-302.

6. Venue is proper in this Court pursuant to Neb. Rev. Stat. § 25-403.01. Defendant previously attempted to bring a lawsuit regarding some of the designs and products at issue here by suing BML in the United States District Court for the District of Connecticut, Case No. 3:20-CV-1368. The Connecticut federal court dismissed Good Banana's lawsuit for lack of personal jurisdiction over BML in Connecticut.

## FACTUAL BACKGROUND

7. Steve Wampold ("Mr. Wampold") is a founder and owner of several companies, including BigMouth, Inc.,—a Connecticut-based wholesaler of toys, trinkets, inflatables, and other novelties ("BigMouth CT").

8. On November 14, 2016, Mr. Wampold entered into an asset purchase agreement on behalf of BigMouth CT with two similarly named Indiana entities—BigMouth Inc. and BigMouth LLC (individually and collectively, "BigMouth IN")—wherein BigMouth IN acquired substantially all of BigMouth CT's assets.

9. Upon the sale, Mr. Wampold began working for BigMouth IN as its "Senior Vice President of Creative Development" and was also elected to its board of directors.

10. On January 24, 2018, Mr. Wampold and BigMouth IN entered into an amended and restated employment agreement (the "Employment Agreement")—effective January 1, 2018—in which Mr. Wampold agreed to become BigMouth IN's "Creative Advisor."

11. The Employment Agreement reiterated Mr. Wampold's election to BigMouth IN's board of directors.

12. On June 30, 2018, Mr. Wampold left his employment with BigMouth IN but remained an active advisor to its board of directors.

13. Following his departure, Mr. Wampold continued to attend BigMouth IN's board meetings and acted as an advisor on BigMouth IN's creative direction. Mr. Wampold was aware of—and was intimately involved in—all aspects of BigMouth IN's business during this time, including product designs, product/design strategy, manufacturing, product launch, and marketing.

14. On December 19, 2019, Mr. Wampold officially returned to BigMouth IN's employ as its CEO and began commercializing a number of product initiatives for BigMouth IN's development—including the "Dream Floaties" and "Floor Floaties" designs that are at issue in this case.

15. On December 23, 2019, and as an employee of BigMouth IN, Mr. Wampold introduced the "Dream Floaties" and "Floor Floaties" designs (collectively, the "Floaties Designs") to his team at BigMouth IN.

16. Mr. Wampold has created at least three entities related to the designs at issue in this case. On or about July 19, 2017, he incorporated Holy Cow Holdings LLC in Connecticut, which is currently dissolved. On or about September 24, 2019, he created the first Good Banana LLC in Connecticut, which is currently dissolved. Upon information and belief, this version of Good Banana LLC was allowed to lapse and be administratively dissolved because Mr. Wampold had returned to BigMouth IN. On or about May 18, 2020, Mr. Wampold formed the second Good Banana LLC in Connecticut, which Mr. Wampold has used to market and sell the Floaties Designs and other intellectual property belonging to BML and at issue in this case, despite that Mr. Wampold had already assigned all of his rights in the Floaties Designs and other intellectual property to BigMouth IN, as had been his practice (and obligation) throughout the duration of his employment with BigMouth IN as well as with BigMouth CT.

17. Article VII of Mr. Wampold's Employment Agreement, required:

"Any and all inventions, improvements, discoveries, designs, works of authorship, concepts or ideas, or expressions thereof, whether or not subject to patents, copyrights, trademarks or service mark protections, and whether or not reduced to practice, that are conceived ***or developed*** by [Mr. Wampold] while employed with the Company and which relate to or result from the actual or anticipated business, work, research or investigation of the Company (collectively, "Inventions"), shall be the sole and exclusive property of the Company. [Mr. Wampold] shall do all things reasonably requested by the Company to assign to and vest in the Company the entire right, title and interest to any such Inventions and to obtain full protection therefor." (Emphasis added).

18. Furthermore, Section 10.06 of the Employment Agreement established that:

"This Agreement is a complete and total integration of the understanding of the parties related to [Mr. Wampold]'s employment with the Company and replaces

4

and supersedes any and all prior or contemporaneous negotiations, commitments, agreements, offers, promises, writings and discussions with respect to the subject matter of this Agreement, and all prior negotiations, commitments, agreements, offers, promises, writings and discussions will have no force or effect. The parties to any other negotiation, commitment, agreement, offer, promise, writing or discussion will have no further rights or obligations thereunder to the extent it relates to the subject matter of this Agreement."

19. Under the Employment Agreement, Mr. Wampold had a contractual obligation to "assign to and vest" in BigMouth IN "the entire right, title and interest to any… Inventions," which were "conceived ***or developed*** by [Mr. Wampold]" while employed with BigMouth IN.

20. From December 23, 2019, until early April, 2020, while employed and/or closely affiliated with BigMouth IN, Mr. Wampold actively worked to develop the Designs for BigMouth IN's benefit. For example:

    a. On or about December 30, 2019, Mr. Wampold used his "bigmouthinc.com" email account ("BigMouth Account") to send an email concerning the Designs, which stated: "Payment has to go through BigMouth accounting. … I can assure you payment will come, or I will pay it if BigMouth does not."

    b. On or about January 14, 2020, Mr. Wampold sent another email from his BigMouth account, which stated that: "Andres will send you the revised artwork for the BIGMOUTH logo to replace the Good Banana label asap."

    c. On February 6, 2020, Mr. Wampold, upon information and belief, used his BigMouth account to purchase the domain names "goairbeds.com" and "gofloorfloaties.com," for use with the Floaties Designs.

    d. On March 10, 2020, Mr. Wampold, using his BigMouth account, sent an email which stated, "I'd like to stress the importance of timing on the

5

Airbeds. We are launching these this year and believe these will be very popular new item for BigMouth."

21. On April 8, 2020, as COVID-19 drastically impacted the business world, BigMouth IN was notified it had fallen into default under its credit agreement with Capitala Private Advisors, LLC.

22. On April 13, 2020, BigMouth IN's board of directors, including Mr. Wampold, unanimously agreed to appoint a chief restructuring officer.

23. On April 16, 2020, Mr. Wampold resigned as CEO.

24. On or about April 25, a receiver (the "Receiver") was appointed by the Commercial Court of Marion County, Indiana, Cause No.: 49D01-2004-PL-014426, to oversee and liquidate BigMouth IN's business.

25. The Receiver then entered into an asset purchase agreement with BML dated on or about July 17, 2020 (the "APA") in which the Receiver sold BML, *inter alia*, "[a]ll [of the] intellectual property" belonging to BigMouth IN. The APA may contain certain confidential and/or non-public information so a copy is not attached to this complaint but will be produced in discovery if requested, and with any appropriate redactions or other confidentiality protections as may be appropriate.

26. In or around August 2020, it came to BML's attention that Defendant, Mr. Wampold, Good Banana, and/or HolyCow had manufactured, marketed, offered for sale, and/or sold products that included the Floaties Designs which BML had purchased from BigMouth IN through the APA.

27. On August 21, 2020, BML sent a demand letter to Defendant's counsel, demanding that Defendant cease and desist from use of Floaties Designs.

28. Defendant refused to cease and desist from the use of BML's purchased Floaties Designs, and has continued to offer the Floaties Designs for sale on its own behalf and for its own profit.

29. Products created using the Floaties Designs are currently listed for sale by Learning Express, Inc., and are actively being sold in-store at a Learning Express location in Omaha, Nebraska.

30. Products created using the Floaties Designs are also available online at the following link: https://learningexpress.com/omaha/catalogsearch/result/?q=floatie . (Last accessed December 1, 2021).

31. After the Connecticut federal court dismissed Good Banana's lawsuit against BML for lack of personal jurisdiction in Connecticut, BML learned that Good Banana had also begun marketing and selling other BigMouth IN designs that BML purchased in the APA.

    a. By way of example and not limitation, Good Banana has misappropriated and infringed certain "Donut" graphics/designs developed by BigMouth IN and purchased by BML in the APA. The Donut is one of BigMouth IN's most iconic and valuable assets. Despite BML's purchase of BigMouth IN's intellectual property, Good Banana is now using the Donut graphics/designs for a blanket, storage bag, seat, and Floor Floatie.

    b. Good Banana has similarly misappropriated and infringed upon other BigMouth IN (now BML) designs regarding certain "Cheeseburger," "Cat," and "Unicorn," themes. Exhibit 1 attached to this Complaint is an exemplar comparison of BML designs and corresponding misleading Good Banana products.

32. When comparing the BigMouth IN designs to the recently launched Good Banana "designs," it is clear that Good Banana has misappropriated and infringed upon the intellectual property of BigMouth IN which now belongs to BML. As such, each and every time Good Banana markets, offers for sale, or sells any such intellectual property as its own, it makes a misrepresentation as to source, ownership, affiliation, and/or approval that the designs or products belong to Good Banana, that Good Banana is a proper source of those designs or products, and/or that Good Banana has permission/license to such designs or products.

33. Wampold appears to be attempting to re-create the "BigMouth IN brand/product lines under his new Good Banana name, despite his contractual assignment of such designs to BigMouth IN and subsequent purchase of all such intellectual property by BML.

**FIRST CAUSE OF ACTION**
*(Misappropriation of Trade Secrets under*
*The Federal Defend Trade Secrets Act,* **18 U.S.C. § 1836** *et seq.*)

34. BML incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

35. The Defend Trade Secrets Act ("DTSA") provides that an owner of a trade secret that is misappropriated may bring a civil action if the trade secret is related to a product used in, or intended for use in, interstate commerce or foreign commerce. 18 U.S.C. § 1836(b)(1).

36. The DTSA defines "trade secret" to include all forms and types of financial, business, or economic information, including patterns, plans, compilations, designs, prototypes, methods, techniques, processes, procedures, or programs, if (A) the owner has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by the public. 18 U.S.C. § 1839(3).

8

37. The DTSA defines "misappropriation" to include acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

38. Mr. Wampold, upon information and belief, complied with his contractual obligations under the Employment Agreement to assign and vest the entire right, title, and interest in the Designs in BigMouth IN.

39. BigMouth IN, therefore, owned the entire right, title, and interest in the Designs presently at issue here.

40. The Designs at issue here include inflatable airbeds with unique designs, colors, shapes, and materials. The Designs were not generally known nor available to the public prior to Mr. Wampold developing the Designs during, or in connection with, his employment at BigMouth IN.

41. BML acquired the designs from BigMouth IN on July 17, 2020, pursuant to the APA.

42. BML has never authorized Defendant's use of the intellectual property belonging to BML.

43. Defendant wrongfully acquired BML's trade secrets through Mr. Wampold who developed the Designs at issue while working with, and for, BigMouth IN.

44. Products created using the Designs at issue are marketed throughout the United States for the use, or intended use, in interstate commerce. For example, Defendant is a Connecticut limited liability company and the products created using the Designs are marketed and offered for sale in Nebraska.

45. Defendant is wholly owned by HolyCow which, in turn, is wholly owned by Mr. Wampold. Mr. Wampold knew, or had reason to know through his role as CEO of BigMouth IN and the Employment Agreement, that the entire right, title, and interest of any invention had been assigned and vested in BigMouth IN.

46. Defendant wrongfully acquired BML's trade secrets from Mr. Wampold, who knew, or should have known, that he did not have the right, title, or any interest in the Designs.

47. Defendant continues to market and offer for sale products created using BML's designs, which BML has not authorized.

48. As a direct and proximate result of Defendant's misappropriations, BML has been damaged in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
*(Misappropriation of Trade Secrets under Nebraska's Trade Secrets Act, Neb. Rev. Stat. § 87-501 et seq.)*

49. BML incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

50. Nebraska's "Trade Secrets Act" defines a "trade secret" to mean information, including, but not limited to, drawings, patterns, compilations, methods, or processes that (a) derive independent economic value from not being known, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Neb. Rev. Stat. § 87-502(4).

51. The Trade Secrets Act defines "improper means" to include, *inter alia*, a breach of a duty to maintain secrecy.

52. The Designs at issue here include inflatable airbeds with unique designs, colors, shapes, and materials. The Designs were not generally known nor available to the public prior to

10

Mr. Wampold developing the Designs during, or in connection with, his employment at BigMouth IN.

53. Mr. Wampold had a contractual obligation through the Employment Agreement to assign his entire right, title, and interest in the Designs to BigMouth IN.

54. All of BigMouth IN's intellectual property was sold to BML pursuant to the APA and BML has not authorized Defendant's use of the intellectual property belonging to BML.

55. Defendant continues to market and offer for sale the Designs at issue owned by BML.

56. As a direct and proximate result of Defendant's misappropriations, BML has been damaged in amounts to be determined at trial.

**THIRD CAUSE OF ACTION**
(*Trademark/Trade Dress Infringement*)

57. BML incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

58. Upon closing pursuant to the APA, BML became the proper and exclusive owner of BigMouth IN's intellectual property, which included trademarks and trade dress for which BigMouth IN was known in the market.

59. BML has put time, effort, and money into utilizing the intellectual property and associated goodwill of BigMouth IN.

60. Good Banana is using and selling intellectual property, without authorization, that is exclusively owned by BML

61. Good Banana's unauthorized use of BML's intellectual property is likely to cause confusion or mistake as to the true and proper source of the products.

62. Good Banana's unauthorized use of BML's intellectual property has and will continue to cause damages to BML in at least lost profits by BML and unjust gains by Good Banana, in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION
(*Unfair Competition*—Neb. Rev. Stat. § 59-1602 et seq. and at Common Law)

63. BML incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

64. Good Banana is using, marketing, and selling intellectual property in Nebraska that is exclusively owned by BML and for which BML has given Good Banana no authorization to use, market, or sell. In fact, BML has expressly demanded that Good Banana cease all use of intellectual property that BML purchased from BigMouth IN, but Good Banana has refused.

65. By passing off BML's intellectual property as its own to the consuming public in Nebraska, Good Banana is committing unfair, misleading, and deceptive acts in Nebraska.

66. BML has been and continues to be damaged by Good Banana's conduct, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
(Deceptive Trade Practices—Neb. Rev. Stat. § 87-301 et seq.)

67. BML incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

68. Good Banana is using, marketing, and selling intellectual property in Nebraska that is exclusively owned by BML and for which BML has given Good Banana no authorization to use, market, or sell. In fact, BML has expressly demanded that Good Banana cease all use of intellectual property that BML purchased from BigMouth IN, but Good Banana has refused.

69. By selling designs and products, without authorization, that BML purchased from BigMouth IN, Good Banana is engaging in one or more of the following:

    a. Good Banana is passing off the intellectual property of BML as Good Banana's property to consumers in Nebraska.

    b. Good Banana is creating a likelihood of confusion or of misunderstanding as to source, sponsorship, affiliation, approval, or certification of goods among Nebraska Consumers by marketing and selling intellectual property owned by BML.

    c. Good Banana is creating a likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by BML when Good Banana markets and sells intellectual property owned by BML.

    d. BML is a Nebraska company, while Good Banana is a recently formed company in Connecticut being used to market and sell designs that were assigned to BigMouth IN and subsequently purchased by BML. As such, Good Banana misrepresents the geographic origin of the intellectual property it is selling in Nebraska when it claims BML's designs are its own to sell and do with as it pleases.

70. Each individually wrapped package either manufactured, produced, imported, distributed, promoted, displayed for sale, offered for sale, attempted to sell, or sold in violation of Nebraska's deceptive trade practice laws constitutes a separate violation.

71. BML is likely to be, and is actually being, damaged by Good Banana's use of BML's intellectual property.

72. BML respectfully asks the Court for an injunction enjoining Good Banana from continuing to engage in deceptive trade practices, as well as any other equitable relief the Court may deem proper. Good Banana's actions indicate that it will not cease its deceptive trade

practices unless enjoined. Furthermore, BML requests this relief in addition to all other relief that may be warranted pursuant to other laws of Nebraska.

73. Still further, Good Banana has acted as alleged despite knowing that the intellectual property at issue was previously purchased by BML from BigMouth IN. Furthermore, BML sent Good Banana a cease and desist letter demanding that Good Banana cease all use of BML's intellectual property purchased from BigMouth IN, but Good Banana has ignored such demand and continued in its conduct as alleged here. As such, Good Banana's conduct has been and continues to be willful, entitling BML to seek also the recovery of attorney fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BML Rec, LLC, respectfully prays for judgment in its favor against Defendant on all claims and that BML be awarded:

a. An injunction preventing Defendant Good Banana, LLC, from continuing to use and/or misappropriate BML's trade secrets, pursuant to 18 U.S.C. § 1836(b)(3)(A);

b. Damages for actual loss caused by Defendant Good Banana, LLC's use and/or misappropriation of BML's trade secrets, as well as damages for any unjust enrichment caused by the misappropriation of BML's trade secrets that has not been addressed in computing damages for actual loss, pursuant to 18 U.S.C. § 1836(b)(3)(B)(i);

c. An injunction preventing Good Banana, LLC, from actual or threatened use and/or misappropriation of BML's trade secrets, pursuant to Neb. Rev. Stat. § 87-503;

d. Damages for actual loss caused by Defendant Good Banana, LLC's use and/or misappropriation of BML's trade secrets, as well as damages for any unjust enrichment caused by the misappropriation of BML's trade secrets that has not been

|   |   |
|---|---|
|   | addressed in computing damages for actual loss, or at the very least a reasonable royalty for the unauthorized disclosure or use of BML's trade secrets, pursuant to Neb. Rev. Stat. § 87-504; |
| e. | An injunction pursuant to Nebraska's Consumer Protection Act and/or Deceptive Trade Practices Act, enjoining Good Banana, LLC, from marketing, advertising, sale, or any other use of BML's intellectual property; |
| f. | Damages pursuant to Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1609; |
| g. | Attorney fees pursuant to Neb. Rev. Stat. § 59-1609, and/or Neb. Rev. Stat. § 87-303(b); |
| h. | Pre- and post-judgment interest as may be allowed by law; |
| i. | Litigation costs as allowed by law; and |
| j. | Such other, further, and different relief as to the Court seems just and proper. |

Dated this 2nd day of December, 2021.

BML REC LLC, Plaintiff,

By: */s/ Daniel J. Fischer*
Daniel J. Fischer, #22272
Gabreal M. Belcastro, #27019
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE  68124-1079
(402) 390 9500
(402) 390 9005 (facsimile)
Dan.Fischer@koleyjessen.com
Gabreal.Belcastro@koleyjessen.com

*Attorneys for Plaintiff.*

**Unicorn Themes - BigMouth**                     **Unicorn Themes – Good Banana**




**EXHIBIT 1**

## Donut Themes – BigMouth

## Donut Themes – Good Banana






**EXHIBIT 1**

**Cat Theme – BigMouth**



**Cat Themes – Good Banana**





**EXHIBIT 1**

## Cheeseburger Themes - BigMouth

## Cheeseburger Themes – Good Banana





**SHAGGY BAGGIE TOTES**
$24.99
The Tote Bag With Plush You'll never s
kids (and parents) stay organized with



**FLOOR FLOATIES**
~~$119.99~~ $89.00
The comfiest way to hang
comfort of a personal-sized

**EXHIBIT 1**